# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Ervin Wilson, Jr., ) | Civil Action No. 9:13-3495-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| Deputy Warden Willie Davis and ) | |
| Catherine James, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 24, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 25, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition on May 7, 2014.

The Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)



1

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that the Defendant Willie Davis (Deputy Warden of the Lee Correctional Institution, where Plaintiff is housed) placed Plaintiff in the "Super Max" because Plaintiff had exercised his right of "free speech". This alleged retaliation apparently arose (according to the Plaintiff) out of Plaintiff filing grievances about his prison conditions. Although difficult to decipher, Plaintiff is apparently alleging that this occurred on October 7, 2013, when he was moved from Cell 151 in the SMU[3] to the Super Max Unit for filing "grievances & Requests to Staff [for] unconstitutional conditions". Plaintiff then details numerous grievances and/or Requests to Staff forms he submitted concerning various issues and complaints, including that he was being double celled, that he had been maced, and denied medical care, which he contends led to the retaliation by Davis of placing him in the Super Max, where Plaintiff feared being "beaten, poisoned & killed" unless he stopped litigating. Plaintiff also alleges that the Defendant James (the prison Grievance Coordinator) has violated his First Amendment right of access to the courts by failing to file and process his grievances, and by thwarting his attempts to exhaust his administrative remedies. Plaintiff seeks monetary damages, as well as that both of the Defendants be terminated. Plaintiff has attached to his Complaint as exhibits copies of numerous grievances that he has filed

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Special Management Unit.



together with related grievance documents, some Request to Staff Member forms he has filed with responses, copies of some filings relating to state and federal court actions, copies of some SCDC medical summaries, and copies of some incident and disciplinary documents. Plaintiff has also submitted some affidavits from other inmates. See generally, Plaintiff's Verified Complaint, with attached Exhibits.

With respect to Plaintiff's affidavits, these submissions include an affidavit from inmate Wayne Thomas, who attests that Plaintiff was placed in a "segregation unit" although he had "no charges to my knowledge". Thomas attests that Plaintiff is "known to teach others law & their rights", that Plaintiff has been threatened by "officers" with punishment for "this teaching of rights", and that on November 12, 2013 "one Officer Commander did say the same to one Warden Bush". Thomas states that it is his "firm belief" that Plaintiff is being punished for teaching inmates their rights. See generally, Thomas Affidavit.

Plaintiff has also submitted an affidavit from inmate Anthony Mann, another prisoner in the Super Max section of the Lee Correctional Institution. Mann attests that he overheard Lt. Anthony Davis tell Plaintiff that Deputy Warden Davis wanted him placed in that "cage". Mann further attests that "Sgt. McBride" told Plaintiff that "Deputy Warden Davis did not like 'all that paperwork' [Plaintiff] was filing in reference to the conditions here and maybe he should slow down a little with his pen". Mann also attests that he has overheard "Sgt. Colton West, Lt. Anthony Davis, Sgt. McBride, Lt. Butterbaugh, and numerous other guards tell Plaintiff that he is in Super Max due to his continuously writing complaints about the conditions of confinement at LCI", and that Davis "is tired of [Plaintiff's] complaints and his instigating other prisoners to do the same." Mann also attests that on November 12, 2013, the "newly assigned warden" (Dennis Bush) was touring the



Super Max and asked Davis and "Cpt. Commander" why Plaintiff was in the Super Max, and that Commander responded by stating "he is back here because he was stirring up other prisoners on the wing". See generally, Mann Affidavit.

In support of summary judgment in this case, the Defendant Willie Davis has submitted an affidavit wherein he attests that he is the Deputy Warden at the Lee Correctional Institution. Davis attests that he is unaware of the litigation and free speech activity of the Plaintiff, and therefore could not have taken any of that into account in determining housing placement. Davis further attests that it would not be feasible for the Department of Corrections to continuously move inmates around because they filed litigation, as they do not have the manpower nor space to play musical chairs in this way. Davis attests that Plaintiff does not get along well with roommates and has been without roommates for several years, and that to ensure his and other inmates' safety, Plaintiff's housing assignment has been changed several times. Davis attests that inmate housing is based on an inmate's needs, behavior, and bed availability, and that Plaintiff's preference to be housed alone often precludes his placement with the general population.

Davis attests that on October 15, 2013, Officers Shamika Braddy and Levern Hickson approached Plaintiff's cell to restrain him so that a roommate could be placed in his cell, whereupon Plaintiff stated that if they brought another inmate into his cell, he would stab this other prisoner. Davis attests that after Plaintiff continued to make threats Braddy administered chemical munitions into the cell, following which the supervisor was notified and Plaintiff was examined by a nurse with no injuries noted. Plaintiff was charged with threatening to inflict harm, failing to obey directives, and interfering with job duties, and was relocated due to this behavior. Davis has attached Incident Report and Use of Force forms to his affidavit describing this incident. See generally, Davis



Affidavit, with attached Exhibit.

The Defendant Catherine James has submitted an affidavit wherein she attests that she is an Inmate Grievance Coordinator at the Lee Correctional Institution. James attests that, pursuant to the SCDC Inmate Grievance procedures, inmates may file only five grievances per month, and that after five grievances are filed, all subsequent grievances are returned unprocessed, with the exception of a disciplinary conviction appeal or a classification issue, which are always grievable. James attests that she understands these changes were necessary to prevent inmate abuse of the grievance system because previous frivolous inmate filings impaired the grievance system's efficiency and efficacy, that this policy was instituted agency wide and had nothing to do in particular with the Plaintiff, and that in any event she does not make the policies governing the grievance process. James further attests that, as an Inmate Grievance Coordinator, she does not determine housing assignments, nor can she direct that a housing assignment be changed. James attests that, oftentimes, sanctions levied against a inmate demand that housing assignments be changed because of the nature of the charge, and that this is done by classification. See generally, James Affidavit.

As attachments to his memorandum in opposition to the Defendant's motion, Plaintiff has submitted some additional affidavits. Inmate Vincent Beaton attests that on or about October 7, 2013 Plaintiff was placed in the Super Max unit "for no apparent reason other to deny inmate access to court, and threaten, and slow down his process in the court system". Beaton then goes on to complain about his own legal situation, his access to legal supplies and to the courts, all with respect to a case he has pending federal court. See generally, Beaton Affidavit. In another affidavit, inmate Jarold Sullivan attests that, while standing at his cell door, he overheard Sgt. Gibbs tell Plaintiff to "pack up his belongs" over the course of several days, even though Gibbs never moved him.



However, Sullivan further attests that it was "later stated by officers of (B-1) shift that [Plaintiff] was placed in Super Max because he was filing too much paperwork on the officers".

Plaintiff has also attached copies of numerous letters he has written, discovery requests and responses, more grievance and request to staff member forms relating to various matters, and copies of some E. H. Cooper trust account documents.

### Discussion

As noted, both Defendants have moved for summary judgment on Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### Defendant Willie Davis

Liberally construed, Plaintiff has alleged that the Defendant Davis is or has placed him



in the "Super Max" out of retaliation for Plaintiff filing grievances and/or lawsuits, or assisting and/or giving advice to other inmates concerning their legal and constitutional rights. Plaintiff seeks monetary damages against this Defendant for this conduct, as well as that he be "terminated".

As a Deputy Warden at the prison, the Defendant Davis is subject to suit for monetary damages in his individual capacity in a § 1983 action. Will v. Michigan Dep't of State Police, 491 U.S. at 71; Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). However, with respect to Plaintiff's other claim for relief, the undersigned is constrained to note that this Court has no authority to order that either of the named Defendants be terminated from their jobs. See Maxton v. Johnson, 488 F.Supp. 1030, 1032, n. 2 (D.S.C. 1980), citing United States v. White County Bridge Commission, 275 F.2d 529, 535 (7th Cir.)[A federal district court lacks the inherent power to hire or remove officials not within the executive control of that federal district court], cert. denied sub nomine, Clippinger v. United States, 367 U.S. 818 (1960). Therefore, that claim for relief is without merit and should be dismissed.

With respect to Plaintiff's damages claim, Davis argues that Plaintiff has failed to show that Davis deprived him of a right guaranteed by the constitution or federal law, as he has no constitutional right to placement in any particular security classification or housing assignment. See generally, Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. However, while Plaintiff may not have a constitutional right to any particular classification or custody assignment, prisoners do retain some First Amendment rights; see Thornburgh v. Abbott, 490 U.S. 401, 407 (1989);



Witherow v. Paff, 52 F.3 264, 265 (7th Cir. 1995); and the "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for exercising their rights. Hartman v. Moore, 547 U.S. 250, 256 (2006).

> [I]n order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287(1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir.1997).  A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir.2000).  The third factor, "motivation," may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir.1996); Goff v. Burton, 91 F.3d 1188 (8th Cir.1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir.1995). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287.

Brown v. Beard, No. 07-637, 2011 WL 1085890, at * 8-9 (W.D.Pa. Mar. 21, 2011).

Here, Plaintiff's evidence is that he was involved in litigation and/or helped or advised other prisoners on litigation matters and/or attempted to file grievances and/or lawsuits, which is protected activity for purposes of a retaliation claim. See Bounds v. Smith, 430 U.S. 817, 828 (1977) [Inmates have constitutional right of access to the courts]; Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir.1981) [retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution]; Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995) ["It is settled that prison officials cannot act against a prisoner for availing himself of the courts and attempting to defend his constitutional rights"]. The evidence is also sufficient to show that Plaintiff was subjected to an adverse action by being placed in the "Super-Max". Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir.2000) [holding that an allegation that a prisoner was kept in administrative

8



segregation to punish him for filing civil rights complaints stated a retaliation claim].

As for motivation, while Davis attests in his affidavit that he was "unaware of Plaintiff's litigation activities" and that Plaintiff's placement (presumably in the Super Max) was "due to [his] behavior", Plaintiff has submitted substantial evidence showing his history of repeated filings of grievances and Request to Staff Member complaints leading up to the classification decision complained of, as well as affidavits from other prison inmates who attest that they heard prison officials stating that Davis did not like all this "paperwork" and litigation activity Plaintiff was engaged in, and that Plaintiff had been placed in the Super Max because Davis was "tired of [Plaintiff's] complaints and his instigating other prisoners to do the same", was "due to his continuously writing complaints about the conditions of confinement at LCI", and that Plaintiff "was placed in Super Max because he was filing too much paperwork on the officers". Hence, this is not a case similar to the situation in Woods, where the complainant's retaliation claim was dismissed because he "offered no evidence to oppose the prison's characterization of his treatment as fair and according to the guidelines of the prison". Woods, 51 F.3d at 581.

While Davis may still be able to prevail by proving that he would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest; see Rauser v. Horn, 241 F.3d 330, 334 (3rd Cir. 2001); considering the evidence presented in the light most favorable to the Plaintiff, as this Court is required to do on a motion for summary judgment, the undersigned cannot find that the Defendant Davis is entitled to summary judgment on Plaintiff's retaliation claim where there are conflicting sworn statements as to what happened and why. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) [Summary judgment not appropriate where sworn statements present version of the facts which require credibility determinations]; Mann



v. Failey, No. 13-6446, 2014 WL 3511878, at * 7 (4th Cir. July 17, 2014) [where prisoner files the necessary briefs, affidavits, and corroborative evidence to support his claims, disputes of credibility are reserved for a fact finder]; see also Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)[When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true].

Therefore, the Defendant Davis is not entitled to summary judgment on this claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)["Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts" are functions for the trier of fact]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"].[4]

**Defendant Catherine James**

Plaintiff's complaint against the Defendant James is that she interfered with his right to participate in the prison grievance procedure and/or failed to properly process his grievances.

---

[4] While Davis also argues, in the alternative, that he is entitled to qualified immunity from suit on this claim, a defendant is only shielded from liability for civil damages on the basis of qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Here, it was certainly clearly established in 2013 that prison officials could not retaliate against a prisoner for exercising his legal rights. Woods, 51 F.3d at 580 ["It is settled that prison officials cannot act against a prisoner for availing himself of the courts and attempting to defend his constitutional rights"] (1995 case). Therefore, as there is a genuine issue of material fact presented in the evidence as to whether the Defendant Davis engaged in retaliatory conduct, he is not entitled to qualified immunity from suit on this claim. Gray, 925 F.2d at 95 [When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true].



James is entitled to summary judgment on this claim, as there is no constitutional right of access to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Further, even assuming James failed to properly process or handle his grievances, this is also not itself a constitutional claim. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

Finally, liberally construed, Plaintiff's allegations could be read as asserting a claim that James' conduct somehow denied him access to the courts. Plaintiff's argument appears to be that by failing to process his grievances, James denied him access to the courts because he cannot file

11



a federal lawsuit without first exhausting his grievance remedies. This claim fails for two reasons.

First, even assuming for purposes of summary judgment that James failed to process Plaintiff's grievances or denied Plaintiff access to the grievance process, that would not preclude Plaintiff from filing a federal lawsuit, as it is well established that prison inmates may proceed with court actions without otherwise exhausting a prison grievance procedure where prison officials interfered with or prevented the prisoner from doing so. See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) [Inmate's failure to exhaust excused where: (1) administrative procedures are unavailable (for example, he is unable to obtain the requisite forms); (2) prison officials obstructed his attempts to exhaust; or (3) prison officials failed to follow procedures for processing grievances]; Jernigan v. Strchell, 304 F.3d 1030, 1032 (10th Cir. 2002) [If employees of a facility prevent the filing of a grievance or the inmates's ability to exhaust administrative remedies, the exhaustion requirement may be "unavailable" and defendants estopped from raising non-exhaustion]; Young v. Good, No. 04-407, 2008 WL 4816474 at * 3 (W.D.Pa. Nov. 4, 2008).

Second, in order to proceed with this claim Plaintiff must have some evidence to show that he was prejudiced in a pending court proceeding because of improper conduct or actions by James. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010)["[A] prisoner must demonstrate actual injury from interference with his access to the courts - that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."]. Plaintiff has provided no evidence to show that any



conduct by James prejudiced him in any pending legal case. While Plaintiff has provided copies of some court filings as attachments to his Complaint, there is no indication in any of the evidence or exhibits provided to the Court that anything James did or did not do prejudiced Plaintiff with respect to any court filing, nor does Plaintiff himself even make any such specific allegation in his pleadings. Indeed, Plaintiff's voluminous filing history both in this case as well as in his other federal court filings[5] show that Plaintiff has enjoyed repeated access to this Court for the prosecution of his claims.

Therefore, to the extent Plaintiff intended to assert this as a separate claim, it is without merit. Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

### Conclusion

Based on the foregoing, it is recommended that the Defendant James' motion for summary judgment be **granted**, and that James be **dismissed** as a party Defendant in this case. However, with respect to the Defendant Davis, it is recommended that Davis' motion for summary judgment on Plaintiff's damages claim alleging that Davis unlawfully retaliated against him by placing him in the Super Max for filing grievances and/or court actions and telling other prisoners about their legal rights be **denied** for the reasons stated.

---

[5]Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) [a federal court may take judicial notice of the contents of its own records].



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 25, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

